## Bell, Secretary of Banking, etc., v. Payamps et ux.

*George Ovington, Jr.*, for plaintiff.

*Arthur S. Minster*, for defendant.

GORDON, JR., P. J., February 23, 1944.—This is a rule by defendants to mark a deficiency judgment satisfied of record on the ground that it was released and discharged by plaintiff at the time of a resale to defendants of a piece of real estate previously owned by them and bought in by plaintiff at a sheriff's sale under the judgment, one of the terms and conditions of the, resale having been, as alleged by defendants, the release of the judgment in question.

On November 7, 1935, the plaintiff association entered judgment against defendants in the sum of $2,625, and on March 2, 1936, at a sheriff's sale under the judgment, bought in for $75 a property of defendants situate at Arandell and Jackson Streets in the City of Philadelphia. This left a deficiency judgment against defendants in the amount of $2,550. Thereafter they remained in possession of the property as tenants until May 1938, when the Secretary of Banking, who in the meantime had taken over the plaintiff association for liquidation, filed a petition in this court for leave to sell the property to a third person for $1,300. Before the petition was presented to the court defendants made an offer of $1,350 for the property to the Secretary of Banking. The offer was embodied in a letter from their counsel to counsel for the Department of Banking in which, in addition to stating the price his clients offered for the property, he said, "Mr.

Payamps is borrowing all of the necessary funds, and, therefore, it would be necessary for him to have a complete release from liability on any previous mortgage or judgment." The Secretary of Banking notified defendants that, if they wished to buy the property, they must appear and present their offer to the court at the presentation of the secretary's petition for leave to make the sale to the third person referred to above. This defendants did through counsel on May 6, 1938, and our Brother Lewis, who heard the case at that time, instead of allowing the sale prayed for in the petition, entered a decree authorizing a sale of the property to defendants for a flat $1,350, without any reference in his decree to the giving of a release or satisfaction of the deficiency judgment as a part of the transaction. The record is wholly silent as to what actually occurred when defendants' offer was presented to the court. It is not asserted by defendants, and neither the judge who heard the petition, nor counsel who were present at the time, recall that the court was informed of defendants' written offer, or that the oral offer presented to it by their counsel at bar made the giving of a release a condition of the purchase of the property by defendants. It is reasonable to assume that had a release of the judgment been a part of the offer made to, and accepted and approved by, the court it would have been included in the decree authorizing the sale. The only conclusion reasonably to be drawn from its absence would seem to be either that no such offer was made, or, if defendants actually did offer to purchase for $1,350 both the property and a release of the judgment, that the court, in authorizing a sale on different terms, intended to reject the offer as made. However that may be, the subsequent purchase of the property by defendants upon the exact terms specified in the decree was equivalent to their acceptance of a counter-offer by the court to sell upon those terms. This is especially so when we consider

that defendants made no demand at the settlement for a release or order to satisfy the judgment, remained silent upon the subject for more than five years, and waited until January 3, 1944, over a year after the judgment had been revived, before moving to secure the release they assert was an important condition of the sale, by the filing of the present petition to mark the judgment satisfied of record.

We see no merit in defendants' contention that their written offer to the secretary to buy both the property and a release of the deficiency judgment for $1,350, followed by the conveyance to them, constituted an enforcible acceptance of that offer. The secretary is not in the position of a private owner of property, who can deal with it as he pleases and independently make binding and enforcible contracts with respect to it. As liquidator of the association he was in possession of assets which he could sell or otherwise dispose of only on terms authorized and approved by the court. Without such authority he could neither accept an offer to buy, nor make a binding contract to sell, such assets; and any sale of them on terms other than those expressly authorized by a judicial decree would be ultra vires and void. It was essential to defendants' case, therefore, to show an acceptance by the court of their written offer to the Secretary of Banking, and this they have completely failed to do. The offer is not entirely free from ambiguity, but even if it were, and defendants had shown an unequivocal acceptance by the secretary, their position would be no stronger, for that alone would not have created a binding contract, in the face of the decree that was actually entered. This is not a case involving a mere correction of an inadvertent omission in the court's decree: it is essentially a proceeding to enforce specific performance of an alleged agreement for the sale of realty. Counsel candidly admit that they are unable to assert or prove that the offer made to, and accepted by, the court

called for a release. In these circumstances, the agreement of sale subsequently entered into, which did not provide for a release of the deficiency judgment, followed by the settlement and confirmation of the sale by the court upon the terms authorized by its decree, definitely concludes the case against the position taken by defendants.

In addition, the very nature of the offer itself renders it inconceivable either that the secretary would have accepted, or that the court would have approved, it. The secretary had two assets of the association to be liquidated, a piece of real estate and a $2,550 deficiency judgment against defendants. He had been offered $1,300 for the real estate alone by a third person, and it was worth at least $1,100 according to his petition under the Deficiency Judgments Act to fix its fair value at the time the association bought it in at the sheriff's sale. Assuming, therefore, that the property was worth $1,300, the figure most favorable to defendants, and crediting this sum against the original judgment, the deficiency judgment was worth $1,250. The two assets together were therefore worth $2,350, and it was the secretary's duty to realize as much as he could from them for the benefit of the association's shareholders. In these circumstances he would have been wholly unwarranted, and indeed remiss in his plain duty, had he rejected the third party's offer of $1,300 for the real estate alone in order to sell both assets to defendants for the paltry additional sum of $50. Such a sale would have been so manifestly unconscionable as to make it highly improbable that the offer was ever submitted to the court, which unquestionably would have declined to entertain it. Such lavish generosity by trustees at the expense of the beneficiaries of their trusts is indefensible; particularly if we consider the equities of the situation: for our refusal to satisfy the judgment will not compel defendants to pay a penny more than they actually

owe, or prevent them from receiving all the abatement of their debt they are fairly entitled to through proportionate participation in the final liquidation of the association.

For still another reason, which is equally conclusive against them, defendants are not entitled to prevail in the matter before us. On February 11, 1943, judgment was entered against them for want of an affidavit of defense to a sci. fa. to revive the judgment issued on March 25, 1942. Now, assuming, arguendo, that the secretary could, and did, make a binding contract to release the judgment, it would have constituted a complete defense in the sci. fa. proceeding. No such defense was set up by defendants, however, in that proceeding, and the judgment rendered in it precludes them from enforcing it now, under the well-settled rule that a defendant must present all the defenses available to him in the cause of action sued on, and will be taken to have waived those he fails to set up. A judgment is conclusive, not only as to all defenses pleaded, but also as to those which were not, but could have been, interposed to the suit. The judgment in the sci. fa. proceedings is, therefore, res adjudicata against defendants of the question now before us: Dowling v. McGregor, 91 Pa. 410; Cheyney et al. v. Wright et al., 7 Phila. 431; Irwin et al. v. Nixon's Heirs, 11 Pa. 419; Eby's Case, 9 W. & S. 145; Morton v. Weaver, 99 Pa. 47; Reifsnyder v. Missimer et ux., 9 Montg. 94. Not only does the present petition come too late, but also its dismissal will do no substantial injustice to defendants, since they will be compelled ultimately to pay no more than the balance of their debt to the association, after a proper credit is given in the proceedings now pending before us to fix its fair market value under the Deficiency Judgments Act.

For the foregoing reasons the rule to mark the judgment satisfied is discharged.